[No. B235835. Second Dist., Div. One. Dec. 31, 2012.]

MARTINA A. SILAS, Plaintiff and Respondent, v.
JAMES ELLIS ARDEN, Defendant and Appellant.

COUNSEL

James Ellis Arden, in pro. per.; Marcarian Law Firm, Armond Marcarian and Marc L. McCulloch for Defendant and Appellant.

Martina A. Silas, in pro. per., for Plaintiff and Respondent.

OPINION

**JOHNSON, J.**—James Ellis Arden (Arden) appeals judgment in favor of Martina A. Silas (Silas) in Silas's action against Arden for malicious prosecution of a malpractice action against her. Silas represented Ross Gunnell (Gunnell) in a personal injury action resulting in a jury award that was later overturned on the grounds that workers' compensation was the exclusive remedy. Gunnell filed a malpractice action against Silas, asserting she failed to assert a meritorious defense to workers' compensation exclusivity, and Gunnell was represented by Arden in that action. Silas's motion for summary judgment was granted in Gunnell's malpractice action, and she commenced this action for malicious prosecution against Arden, resulting in a jury award.

On appeal, Arden contends the action is barred by the one-year statute of limitations of Code of Civil Procedure section 340.6, and insufficient evidence supports the malicious prosecution award and punitive damages. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. *The* Gunnell v. Metrocolor *Litigation*

Silas represented Gunnell in this personal injury action, filed in 1995. Gunnell and others were unskilled laborers who worked for four and one-half months on a cleaning project at Metrocolor Laboratories, Inc. (Metrocolor), which owned a facility to develop and process movie and television film.[2] Gunnell worked at cleaning walls, pipes, and other parts of the interior of the film lab. The workers cleaned the lab using a substance they believed was

---

[1] A portion of our factual statement is taken from the opinion in the personal injury action, *Gunnell v. Metrocolor Laboratories, Inc.* (2001) 92 Cal.App.4th 710 [112 Cal.Rptr.2d 195], the opinion in Gunnell's action against Silas, *Gunnell v. Silas* (Jan. 27, 2006, B180744 [nonpub. opn.]), and the opinion in this action regarding Arden's special motion to strike, *Silas v. Arden* (Dec. 31, 2009, B210297 [nonpub. opn.]).

[2] Other defendants in the case settled with Gunnell prior to trial, as more fully discussed *post.*

cleaning soap. Metrocolor provided no hazard training, posted no signs about chemical hazards, and did not tell the workers what they were using to clean. Gunnell observed one of the Metrocolor supervisors removing a label from the 55-gallon drums containing the cleaning substance. The workers transferred the undiluted liquid to buckets and sprayers and used mops to remove dirt from the ceiling, repeating the procedure several times. Gunnell testified that the cleaning substance rained down on him, making contact with his skin, running down his back and chest, and getting inside his gloves. After a day's work, Gunnell was soaked in cleaning solution. Metrocolor provided no protective clothing other than rubber gloves, which rapidly disintegrated. Gunnell was never told what the solution was, but later learned it was Absorb, a solvent/degreaser, that contained a hazardous substance known to cause brain and nervous system damage and that was readily absorbed through the skin. Gunnell suffered from anxiety and panic attacks, loss of cognitive function, and respiratory problems, and was disabled from work as a laborer.

Pursuant to instruction on an exception to workers' compensation exclusivity under Labor Code section 3602, subdivision (b)(1)[3] (employer's willful assault) based upon Gunnell's unconsented contact with hazardous chemicals, the jury returned a verdict of $1.65 million in compensatory damages and $5 million in punitive damages. Pursuant to Metrocolor's motion for judgment notwithstanding the verdict based on the holding of *Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465 [165 Cal.Rptr. 858, 612 P.2d 948], the court found that pursuant to Labor Code section 3602, subdivision (a), workers' compensation provided Gunnell's exclusive remedy.

The Court of Appeal in *Gunnell v. Metrocolor Laboratories, Inc., supra*, 92 Cal.App.4th at page 714 affirmed the trial court, finding that the action fell within the scope of section 3602, subdivision (a), and did not fall within the exception to workers' compensation exclusivity found in section 3602, subdivision (b)(1). The court found the exception required a criminal battery consisting of a willful physical assault, namely the use of force or violence. As Metrocolor did not use physical force or violence, the exception did not apply. (*Gunnell*, at p. 727.)

B.   *Gunnell's Malpractice Action Against Silas*

In December 2002, Gunnell filed his malpractice action in propria persona, and in October 2003, Arden and his law firm substituted in as counsel. Silas defended on the basis the complaint Silas filed on Gunnell's behalf alleged, in addition to the exception of section 3602, subdivision (b)(1), that the

---

[3] All further statutory references are to the Labor Code unless otherwise indicated.

statutory exception for "fraudulent concealment" under section 3602, subdivision (b)(2) also removed Gunnell's injuries from workers' compensation exclusivity and let him pursue a civil action in superior court.[4] However, during pretrial discovery in the *Metrocolor* action, a medical insurance claim form surfaced showing Gunnell had sought medical care for red and cracking skin on his hands a few days after he started working for Metrocolor. The form stated Gunnell blamed the cleaning solution for his skin condition. After the form surfaced, Silas abandoned the fraudulent concealment theory, and solely relied on the theory of "willful physical assault," arguing Metrocolor's misrepresentations about the cleaning solvent constituted a criminal battery because Metrocolor's deceitfulness made appellant's exposure to the solvent a nonconsensual touching under section 3602, subdivision (b)(1).[5]

Silas moved for summary judgment, arguing the fraudulent concealment exception as a matter of law did not apply, and thus she did not commit malpractice by abandoning it before trial. The trial court agreed and entered summary judgment in her favor. The Court of Appeal affirmed this decision, finding that the fraudulent concealment exception applies when an employer conceals from an employee a work-related injury. The court found an employer's misrepresentations or concealment of workplace hazards remained under the umbrella of workers' compensation exclusivity, relying on *Johns-Manville Products Corp., supra*, 27 Cal.3d at pages 469, 474–475. In particular, the Court of Appeal noted that Metrocolor lied about the hazards of the cleaning solution, but it did not conceal from Gunnell any medical information or information about his injury. Gunnell himself attributed his skin problems to the cleaning solution, and as the court explained in rejecting fraudulent concealment in appellant's lawsuit against Metrocolor in *Gunnell v. Metrocolor Laboratories, Inc., supra*, 92 Cal.App.4th 710, "Gunnell claims Metrocolor deceived and defrauded him by not revealing that Absorb was unsafe to use in the employment, assured Gunnell that Absorb was safe to use, did not provide adequate gloves, clothing, or other protective gear, did not provide training in using and handling of Absorb, removed warning labels from Absorb containers, and violated government safety regulations regarding use of Absorb and warnings to employees about its toxic chemical properties.

---

[4] Section 3602, subdivision (b)(2) provides a narrow exception to this exclusivity rule and allows a civil suit "[w]here the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation. . . ." This provision was enacted in 1982 and codifies the common law fraudulent concealment exception that was set forth in *Johns-Manville Products Corp. v. Superior Court, supra*, 27 Cal.3d 465 (*Johns-Manville Products Corp.*).

[5] In connection with his malpractice complaint, Gunnell had also alleged that Silas had misappropriated settlement funds. The trial court granted summary judgment on this issue, but Gunnell did not raise it in his appeal from the trial court's grant of summary judgment in favor of Silas.

Under *Johns-Manville*, an injury to an employee caused by an employer's deceit and concealment of hazardous substances used in the employment, failure to train, and failure to assure a safe workplace environment remains within the course of employment. *Johns-Manville* thus confines Gunnell's remedies to those provided by the [Workers' Compensation Act]." (*Gunnell, supra*, 92 Cal.App.4th at p. 722.)

The remittitur issued March 29, 2006.

### C. *Silas's Action for Malicious Prosecution Against Arden*

On January 15, 2008, Silas filed her complaint for malicious prosecution and abuse of process against Arden, his law firm (Scott, Arden & Salter), and several other attorneys involved in the malpractice action who are not parties to this appeal. Silas's operative first amended complaint was filed on January 31, 2008. Silas asserted that (1) Arden continued to prosecute the claim for misappropriation of settlement funds throughout three versions of the complaint, even when confronted with checks Gunnell endorsed and a notarized settlement agreement and (2) Arden argued that she should have asserted the section 3602 subdivision (b)(2) exception although Gunnell's own testimony about his chapped hands undermined a key component of the theory, namely that he was unaware of the cause of his physical ailments.

#### 1. *Arden's Motion to Strike*

On April 24, 2008, Arden made a special motion to strike under Code of Civil Procedure section 425.16, principally arguing that Silas had no probability of prevailing on the merits because she failed to assert in the *Metrocolor* action the second exception to workers' compensation exclusivity under section 3602, subdivision (b)(2). The trial court granted the motion as to the abuse of process cause of action, but denied it as to the malicious prosecution claim. We affirmed the trial court's ruling, finding that Silas had a likelihood of prevailing on the merits, relying primarily on the trial court's grant of summary judgment in the *Metrocolor* action.

#### 2. *Trial*

The matter went to trial on Silas's claim for malicious prosecution in April 2011.

Silas testified that in preparing Gunnell's case for trial, she researched the *Johns-Manville* case and came to the conclusion the fraudulent concealment exception of section 3602 subdivision (b)(2) did not apply because the employer must conceal the condition from the employee, and the employee

cannot know he is injured. Gunnell testified at his *Metrocolor* deposition that he did not have any symptoms during his employment. However, during the *Metrocolor* trial, it came to light that Gunnell had seen a doctor for a mild hand irritation. Silas concluded that the section 3602, subdivision (b)(2) exception would not apply because Gunnell was aware of the condition during his employment and believed it had been caused by his employment, and there was no evidence Metrocolor was aware of, or aggravated, Gunnell's condition.

Silas believed the physical assault exception applied because Gunnell did not know what the soap solution contained, and courts in other states had permitted such actions to go forward where the employer hid the nature of the harming agent; in such cases, they were argued as a battery. California had not ruled on the issue.

Arden testified his primary assertion of malpractice was based on his contention that Silas should have taken both theories of recovery under section 3602 to trial; she dropped the fraudulent concealment theory without explanation; and the theory Silas took to trial, willful injury, was in Arden's belief the wrong theory based on the facts of the case. In 2004, after completion of the malpractice action, Gunnell suddenly recalled a conversation he had with his physician in 1989 regarding hand irritation, and a conversation he had with his supervisor at Metrocolor. Although Arden knew of Gunnell's recollections, Gunnell never mentioned them to Silas.

Nonetheless, Arden did not read all of Gunnell's trial testimony in the *Metrocolor* case before opposing Silas's motion for summary judgment. Arden did not believe an attorney advancing a theory would first research the case law to see how courts had applied the statute. He was more concerned with the facts of his case, and did not agree that *Johns-Manville* was controlling on the issue of whether the fraudulent concealment exception applied. He did not recall reading Gunnell's 1997 deposition testimony regarding his rash from the cleaning solution.

Arden understood that for Gunnell to prevail on malpractice, Arden had to prove that Silas would have been successful on the fraudulent misrepresentation theory.

With respect to the claim for misappropriation, the fee agreement between Silas and Gunnell provided that Gunnell was responsible for costs incurred, and in the event of a settlement, Gunnell would reimburse Silas for all costs advanced before he was entitled to settlement funds. In connection with the settlement with defendants Eastman Kodak Company and Van Waters & Rogers in the *Metrocolor* action in February 1999, the costs incurred of

$100,000 exceeded the settlement of $20,000. Silas gave Gunnell $2,500 of the proceeds although the fee agreement did not require her to do so. At the time of settlement, Silas witnessed Gunnell sign the checks and settlement documents, and witnessed the notary certifying Gunnell's signature. The checks were endorsed by Gunnell and the signature on the checks and settlement agreement are identical. Gunnell deposited the Van Waters check into his account. Nonetheless, Gunnell asserted in the malpractice action that Silas forged his signature on the Van Waters check.

Arden did not investigate Gunnell's allegations regarding misappropriation of settlement proceeds because the main theory of the case was the alleged failure to assert the section 3602, subdivision (b)(2) exception. He did, however, understand the allegations of misappropriation were serious ethical violations. Arden did not serve any requests for production of documents regarding the misappropriation allegations because the "focus of the malpractice case was elsewhere."

At trial, Arden asserted that at Gunnell's deposition in February 2004 when he was shown the settlement documents and checks with Gunnell's notarized signature indicating Gunnell had received the funds, Arden nonetheless still believed Gunnell had a case for misappropriation of funds. However, Arden's actual doubts in February 2004 about Gunnell's claims were exposed at Arden's January 2011 deposition when he admitted he had doubts whether the misappropriation claim had merit; once he was shown the checks, Arden decided not to pursue the misappropriation claim. Arden admitted at trial he recognized Gunnell's signatures on the settlement documents and checks.

Arden did not agree an attorney had a duty to withdraw meritless allegations when it was discovered the allegations did not have any basis, contending his primary duty was to his client. The amended complaint, filed after Arden substituted in, contained the same allegations because he needed to get another pleading on file after Silas filed a demurrer. Nonetheless, three months after Gunnell's deposition, in May 2004, Arden served a second amended complaint containing the misappropriation allegations. In July 2004, after receiving the summary judgment motion, Arden filed a third amended complaint containing the misappropriation allegations. Arden claimed he knew of no procedure to withdraw allegations from a pleading.

Arden disputed how Silas had disbursed the settlement funds because the disbursal did not agree with the retainer agreement, and that was the basis for his continuing to assert the misappropriation theory. Arden questioned the notarized settlement documents because the notarization did not state which documents the notary witnessed Gunnell signing. He did not object to the settlement documents on the basis they were forgeries, but instead that he did not find them to be properly authenticated.

Even after receiving the summary judgment motion, Gunnell did not offer to withdraw the misappropriation claim. Further, Arden did not withdraw the misappropriation claim after being repeatedly asked to do so.

Arden denied harboring any malice towards Silas. He did not harass her in any fashion because Silas was represented by a lawyer. He did not believe she had "phonied up" the notarization, but that "it wasn't the proof it was being asserted to be." Arden had no reason to disbelieve Gunnell's misappropriation allegations. Arden, however, hoped that Gunnell would not press the misappropriation issue. For that reason, he did not investigate the validity of the notarization because "it wasn't part of the case I needed to go forward with." However, he did not inform Silas that he did not intend to go forward with the misappropriation issue because "I would have breached a duty to my client." In his opinion, he would be committing malpractice to concede his client's case had no merit.

Silas argued the case to the jury on the theories that Arden lacked probable cause because Silas was not negligent in failing to present the jury in the *Metrocolor* action with a theory not supported by the law, and the facts did not support Gunnell's misappropriation claim; further Arden harbored malice based on his lack of research into the law and his failure to review the trial testimony in the *Metrocolor* action. The evidence supported an inference based on this lack of research that Arden prosecuted the malpractice action for the purpose of extracting a nuisance settlement from Silas.

On April 25, 2011, after closing arguments at trial, Arden filed his amended answer, asserting a statute of limitations defense based upon the recent decision of *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874 [122 Cal.Rptr.3d 608] (*Vafi*), which held that under Code of Civil Procedure section 340.6, a one-year statute of limitations applied to a malicious prosecution action against an attorney.

The jury found for Silas and awarded $145,756 in legal fees and costs, $30,000 in noneconomic damages, and $125,000 in punitive damages. The special verdict form asked the jury whether Arden prosecuted the malpractice action for a purpose of other than succeeding on the merits of the claim. They answered "yes."

### 3. *JNOV*

On June 29, 2011, Arden filed a motion for judgment notwithstanding the verdict (JNOV), arguing the matter was barred by the recent decision of *Vafi, supra*, 193 Cal.App.4th 874, which held that under Code of Civil Procedure section 340.6, a one-year statute of limitations applied to a malicious

prosecution action against an attorney; thus, Silas's action, filed more than two years after the favorable termination of the Gunnell action, was untimely. Further, there was no evidence he lacked probable cause or that he acted with malice.

Silas opposed, contending that the trial court was not bound by the *Vafi* opinion, the opinion was not retroactive, *Vafi* was incorrectly decided, and the opinion of the Court of Appeal on Arden's motion to strike was law of the case.

The trial court denied Arden's motion for JNOV, finding that the *Vafi* decision should not be given retroactive effect because the long-accepted and widely relied-upon practice in the legal community was that a two-year statute of limitations under Code of Civil Procedure section 335.1 applied to malicious prosecution actions, as demonstrated by the fact Arden never raised the defense until the *Vafi* decision was issued. Further, the court found Arden had waived the defense because of his failure to raise it earlier, and struck its own order granting leave to Arden to file an amended answer.

## DISCUSSION

Arden principally argues that *Vafi, supra,* 193 Cal.App.4th 874 applies retroactively to bar Silas's action as untimely filed more than one year after the successful termination of the *Gunnell* action, and that insufficient evidence supports the jury's verdicts on liability and damages.

### I. *Statute of Limitations*

Without addressing the question of retroactive application of *Vafi*, Arden argues that Silas's action is barred by the one-year limitations period of Code of Civil Procedure section 340.6, subdivision (a), because she commenced her action on January 15, 2008, more than one year after the remittitur issued on March 29, 2006, in *Gunnell v. Silas*. Silas argues *Vafi*, the case upon which Arden relies, should not be applied retroactively, and that Arden waived the defense by failing to raise it earlier.

#### A. *Factual Background*

Silas's complaint and first amended complaint for malicious prosecution alleged a two-year statute of limitations applied and that her action was timely. Arden's motion to strike, filed in April 2008, did not raise a statute of limitations defense. Arden's answer did not assert a statute of limitations defense. In April 2011, at trial, Arden orally moved to amend his complaint to

assert the limitations defense. The motion was made after both parties had rested and the jury was deliberating.

Silas objected to Arden's amended answer, contending he had waived the statute of limitations defense by not raising it earlier. The trial court permitted Arden to amend his answer. However, when it ruled on Arden's JNOV motion in August 2011, the court, to correct its own error, struck Arden's amended answer because Arden had waived the right to assert the defense. The court noted that the action was filed in January 2008, and more than three years later, in April 2011, Arden moved to amend his answer—after having made a motion to strike, proceeding to trial, and more than a month after the *Vafi* decision. The court stated, "Although the court granted the motion to amend, that decision was clearly in error because it resulted in great prejudice to the plaintiff. Had this [statute of limitations] issue been timely and successfully raised, three years of intense litigation would have been avoided."

B. *Retroactivity of Application of Section 340.6 to Malicious Prosecution Actions Against Attorneys*

In *Stavropoulos v. Superior Court* (2006) 141 Cal.App.4th 190 [45 Cal.Rptr.3d 705] (*Stavropoulos*), the court held that the two-year limitations period of Code of Civil Procedure section 335.1[6] applied to actions for malicious prosecution, rather than the one-year period of Code of Civil Procedure former section 340, subdivision (3).[7] (*Stavropoulos*, at p. 197.) *Stavropoulos* evaluated the legislative history of the respective statutes, and noted that the one-year statute of Code of Civil Procedure section 340, subdivision (3)—applying to actions for libel, slander, assault, battery, or false imprisonment—while covering actions akin to an action for malicious prosecution, did not list that tort. As a result, historically, case law held that malicious prosecution actions fell within the two-year " 'catch-all' " provision of Code of Civil Procedure section 339, subdivision (1). However, after section 340, subdivision (3) was amended in 1905 to include actions for the injury or death of another caused by a wrongful act, the one-year period of section 340, subdivision (3) applied to actions for malicious prosecution. Nonetheless, in 2002, section 340, subdivision (3) was amended and renumbered section 340, subdivision (c), and the phrase " 'for injury to or for

---

[6] Code of Civil Procedure section 335.1, enacted in 2002, provided a two-year limitations period for "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

[7] Code of Civil Procedure former section 340, subdivision (3) provided in relevant part: "An action for libel, slander, assault, battery, false imprisonment, seduction of a person below the age of legal consent, or for injury to or for the death of one caused by the wrongful act or neglect of another" had a limitations period of one year.

the death of one caused by the wrongful act or neglect of another' " was eliminated. At the same time, the legislature enacted Code of Civil Procedure section 335.1, which covered actions for assault, battery, or injury to or death of another caused by the wrongful act or negligence of another. (*Stavropoulos*, at pp. 194–195.) Further, prior to the enactment of section 335.1 and the amendment of former section 340, subdivision (3), judicial decisions held that malicious prosecution actions were to be grouped with injuries to the person for purposes of the statute of limitations. (141 Cal.App.4th at p. 196.) Thus, *Stavropoulos* concluded that the Legislature intended the language " 'injury to, or for the death of, an individual caused by the wrongful act or neglect of another' " to encompass malicious prosecution actions; thus, the two-year limitations period of section 335.1, governed such actions. (*Stavropoulos*, at p. 197.)

However, in *Vafi, supra,* 193 Cal.App.4th 874, the court held that the one-year period of Code of Civil Procedure section 340.6, subdivision (a) applied to malicious prosecution actions against an attorney.[8] (*Vafi*, at p. 880.) *Vafi* based its conclusion on the reasoning that section 340.6 referred to a "plaintiff" rather than a "client" (*Vafi*, at p. 882); based on its plain language, "section 340.6 applies to all actions, except those for actual fraud, brought against an attorney 'for a wrongful act or omission' which arise 'in the performance of professional services.' " (*Vafi*, at p. 881.) The statute does not exempt malicious prosecution actions from its limitations period, and if, as here, " 'exemptions are specified in a statute, [courts] may not imply additional exemptions unless there is a clear legislative intent to the contrary.' " (*Ibid.*) Finally, under traditional rules of statutory construction, "the more specific statute of limitations [in] section 340.6 overrides the general catchall statute" provided in section 335.1. (*Vafi*, at p. 881.)

■ In general, statutes operate prospectively, while judicial decisions operate retroactively to pending cases. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585].) " ' "[A] retrospective law is one that affects rights, obligations, acts, transactions, and conditions which are performed or exist prior to the adoption of the statute." ' " (*Id.* at p. 1206.) Although as a general rule judicial decisions are to be given retroactive effect, there is a recognized exception: " 'when a judicial decision changes a settled rule on which the parties below have relied,' " " ' "[c]onsiderations of fairness and public policy may require that a decision be given only prospective application." ' " (*Claxton v. Waters* (2004) 34 Cal.4th 367,

---

[8] Section 340.6, subdivision (a) provides in relevant part that "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."

378 [18 Cal.Rptr.3d 246, 96 P.3d 496].) " ' "Particular considerations relevant to the retroactivity determination include the reasonableness of the parties' reliance on the former rule, the nature of the change as substantive or procedural, retroactivity's effect on the administration of justice, and the purposes to be served by the new rule. [Citations.]" ' " (*Id.* at pp. 378–379.) Further, "[r]etroactive application of an unforeseeable procedural change is disfavored when such application would deprive a litigant of 'any remedy whatsoever.' " (*Woods v. Young* (1991) 53 Cal.3d 315, 330 [279 Cal.Rptr. 613, 807 P.2d 455].)

At the time Silas commenced her action in 2008, the prevailing view, as evidenced by judicial decisions, including *Stavropoulos*, was the two-year statute of limitations of section 335.1 applied to malicious prosecution actions. More than three years after Silas commenced her action, and more than five years after the cause of action accrued with the favorable termination of the malpractice action in her favor, the Court of Appeal in *Vafi* interpreted Code of Civil Procedure section 340.6 to apply to malicious prosecution actions against attorneys. Even assuming *Vafi* correctly decided the issue, and although malicious prosecution actions are disfavored, as *Vafi* noted, there is no reason to apply Code of Civil Procedure section 340.6, subdivision (a) here, where in the face of the unforeseen change wrought by *Vafi*, Silas's reliance on a two-year statute was manifestly reasonable. For this reason, we need not consider Arden's related arguments that the trial court erred in vacating its order permitting Arden to amend his answer to add the statute of limitations defense or that the court erred in weighing the relative prejudices to the parties of permitting Arden to assert the defense because in light of our ruling, he has suffered no prejudice from the court's order.

II. *Sufficiency of Evidence, Malicious Prosecution*

Arden argues the record is devoid of evidence that he lacked probable cause or harbored malice towards Silas in bringing the malpractice action against her. Arden claims that Gunnell initially filed the action, and that he could not know whether Gunnell's version of facts was accurate until he had litigated the case; further, his duty was to Gunnell; in any event, he did not actively pursue the misappropriation claim.

■ To establish a cause of action for malicious prosecution, a plaintiff must prove that the underlying action was (1) terminated in the plaintiff's favor, (2) prosecuted without probable cause, and (3) initiated with malice. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 [12 Cal.Rptr.3d 54, 87 P.3d 802].) A claim for malicious prosecution need not be addressed to an entire lawsuit; it may, as in this case, be based upon only some of the causes of action alleged in the underlying lawsuit. (*Bertero v. National General Corp.*

(1974) 13 Cal.3d 43, 57 [118 Cal.Rptr. 184, 529 P.2d 608] ["We see no reason for permitting plaintiffs . . . to pursue shotgun tactics by proceeding on counts and theories which they know or should know to be groundless."]; see *Crowley v. Katleman* (1994) 8 Cal.4th 666, 678–679 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

■   The existence or absence of probable cause is a question of law to be determined by the court from the facts established in the case. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 875 [254 Cal.Rptr. 336, 765 P.2d 498].) "The question whether, on a given set of facts, there was probable cause to institute an action requires a sensitive evaluation of legal principles and precedents . . . ." (*Ibid.*) This is because " '[c]ounsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . .' " (*Id.* at p. 885.) Thus, the court "must properly take into account the evolutionary potential of legal principles" and determine, in light of the facts known to counsel, "whether any reasonable attorney would have thought the claim tenable." (*Id.* at p. 886; see *Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 568 [264 Cal.Rptr. 883] ["A litigant will lack probable cause for his action if he relies upon facts which he has no reasonable cause to believe to be true, or seeks recovery upon a legal theory which is untenable under the facts known to him."].) This is an objective standard, and does not take into account the subjective mental state of the defendant; if the underlying claims were objectively tenable, the malicious prosecution claim fails, regardless of any evidence of malice on the part of the defendant. (*Sheldon Appel, supra,* 47 Cal.3d at p. 875.)

■   " 'The malice element of the malicious prosecution tort goes to the defendant's subjective intent . . . . It is not limited to actual hostility or ill will toward the plaintiff.' [Citation.] It can exist, for example, where the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim. A lack of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice [citation], but the lack of probable cause must be supplemented by other, additional evidence. [Citation.] Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218 [12 Cal.Rptr.3d 786].) "Merely because the prior action lacked legal tenability, as measured objectively (i.e., by the standard of whether any reasonable attorney would have thought the claim tenable [citation]), *without more*, would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind. In other words, the presence of malice must be established by other, additional evidence. [¶] . . . [T]hat evidence must include proof of either actual hostility or ill will on the part of the defendant or a subjective intent to deliberately misuse the legal system for personal gain or satisfaction at the

expense of the wrongfully sued defendant. [Citation.]" (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 498–499 [78 Cal.Rptr.2d 142], fn. omitted.) ■ " 'Suits with the hallmark of an improper purpose' " are those where " ' " '(1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.' " ' " (*Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1407 [69 Cal.Rptr.3d 561].)

■ With respect to probable cause, the jury's verdict of malicious prosecution, based upon the lack of merit to Arden's claim Silas failed to assert the section 3602, subdivision (b)(2) exception, is supported by sufficient evidence. "As a general rule, an employee injured in the course of employment is limited to the remedies available under the Workers' Compensation Act." (*Davis v. Lockheed Corp.* (1993) 13 Cal.App.4th 519, 521 [17 Cal.Rptr.2d 233].) In *Foster v. Xerox Corp.* (1985) 40 Cal.3d 306 [219 Cal.Rptr. 485, 707 P.2d 858], the California Supreme Court explained that "[a]n employee who suffers an injury in the course of his employment may recover damages in an action at law only if he comes within certain exceptions to the workers' compensation law." The Supreme Court also explained that "[o]ne of these exceptions is embodied in [section 3602(b)(2)]. It provides that an action at law may be brought '[w]here the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation.' " (*Foster*, at p. 308, fn. omitted.) Thus, to recover under this exception, the plaintiff needed to prove that (1) the employer knew of the plaintiff's work-related injury; (2) the employer concealed the knowledge from the plaintiff; and (3) the injury was aggravated as a result of such concealment. (*Foster*, at p. 312; *Hughes Aircraft Co. v. Superior Court* (1996) 44 Cal.App.4th 1790, 1794 [52 Cal.Rptr.2d 514].) If any one of these conditions is lacking, the exception does not apply and the employer is entitled to judgment in its favor. (*Hughes Aircraft Co.*, at p. 1797.) The exception does not apply where the employee was aware of the injury at all times. (*Jensen v. Amgen, Inc.* (2003) 105 Cal.App.4th 1322, 1326 [129 Cal.Rptr.2d 899].)

■ Here, Silas argued two bases for lack of probable cause: first, that Arden could not argue her negligence in failing to bring a claim based upon an inapplicable exception to worker's compensation exclusivity; and second, he lacked any factual basis for believing Gunnell's misappropriation claims when presented with the notarized settlement documents and endorsed checks

which admittedly all contained Gunnell's genuine signature. The fraudulent concealment exception did not apply as a matter of law based upon *Johns-Manville Corp., supra*, 27 Cal.3d 465, which required that the employer conceal from the employee medical information about the employee's condition. Gunnell was aware of his condition and its cause, and his statements in 2004 that he recalled speaking to a Metrocolor supervisor were facts (whether true or not) that he had not communicated to Silas, an omission which he admitted to Arden. Further, Arden continued to prosecute the misappropriation claim by including it in Gunnell's amended complaints, which were filed even after confronted with Gunnell's signatures on all relevant documents.

With respect to malice, the evidence established that Arden's failure to investigate the merits ·of applicability of the fraudulent misrepresentation exception and his failure to withdraw allegations of misappropriation even when confronted with unequivocal evidence the allegations were not supported by the facts. Sufficient evidence supports the jury's verdict.

III. *Excessive Damages*

Arden finally argues that the punitive damages award was improper because Silas's arguments regarding Arden's motivation and her emotional distress prejudiced the jury, and the compensatory award included sums for legal fees and costs that were paid by her malpractice insurance carrier.

The record submitted to this court does not reveal the filing of a motion for new trial on the ground of excessive damages. (Code Civ. Proc., § 657, subd. 5.) An appellant is not entitled to review of whether a jury awarded excessive punitive damages unless the issue has been properly preserved by a motion for new trial. (*Loshonkohl v. Kinder* (2003) 109 Cal.App.4th 510, 519 [135 Cal.Rptr.2d 114]; *Schroeder v. Auto Driveway Co.* (1974) 11 Cal.3d 908, 918–919 [114 Cal.Rptr. 622, 523 P.2d 662].)

On the second point, the collateral source rule provides that " 'if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor.' " (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 551 [129 Cal.Rptr.3d 325, 257 P.3d 1130].) However, even if Arden were entitled to an offset, the record is devoid of evidence concerning any payments made to Silas by her malpractice insurance carrier. As a result, this argument is deemed forfeited due to Arden's failure to provide an adequate record for review. (See *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656 [117 Cal.Rptr.3d 207].)

## DISPOSITION

The judgment is affirmed. Respondent is to recover her costs on appeal.

Mallano, P. J., and Rothschild, J., concurred.

A petition for a rehearing was denied January 25, 2013, and appellant's petition for review by the Supreme Court was denied April 17, 2013, S208594.