Filed 5/13/16  Roscoe BK Restaurant v. Murphy CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ROSCOE BK RESTAURANT INC., et al., | B260709 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC549772) |
| v. | |
| GLENN A. MURPHY et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Debre K. Weintraub, Judge.  Affirmed.

Law Offices of Michael E. Reznick and Michael E. Reznick for Defendants and Appellants.

Law Offices of Courtney M. Coates and Courtney M. Coates for Plaintiffs and Respondents.

————————————————

A complaint for malicious prosecution and unfair business practices was filed against attorney Glenn Murphy by Roscoe BK Restaurant, Inc. and Dale Ma (collectively, Roscoe BK) for filing allegedly frivolous race and disability discrimination lawsuits against Roscoe BK. Murphy challenges the trial court's order denying his special motion to strike the complaint under the anti-SLAPP statute. (Code Civ. Proc., § 425.16.)[1] Murphy contends Roscoe BK failed to demonstrate a likelihood of success on the merits. We affirm the order.

## FACTS

Dale Ma is the Director of Operations and a shareholder in Roscoe BK, which operates a Burger King restaurant in Van Nuys. Roscoe BK sued Murphy for malicious prosecution and unfair competition under Business and Professions Code section 17200 on June 25, 2014, alleging Murphy brought three frivolous disability and race discrimination lawsuits against Roscoe BK. The complaints alleged African-American plaintiffs visited the Burger King owned by Roscoe BK in December 2008, each with a service dog, and were each turned away due to their race and disability. One lawsuit was involuntarily dismissed while summary judgment was granted as to the other two.

I. **Underlying Lawsuits**

A. *Davis I*

The first lawsuit (*Davis I*) was filed on March 2, 2009, in Los Angeles Superior Court[2] for a violation of the Unruh Civil Rights Act (Civil Code, § 51, et seq.), intentional infliction of emotional distress, and unfair competition (Bus. & Prof. Code, §§ 17200, 17500). The complaint in *Davis I* alleged Davis was told to leave the Burger

---

[1] All further section references are to the Code of Civil Procedure unless otherwise specified.

[2] The case was entitled *John Smith v. Roscoe BK Restaurant, Inc., et al.*, case No. LC084585. The complaint explained it used a pseudonym to keep the plaintiff's identity confidential in accordance with rule 1.100 (c)(4) of the Rules of Court, which requires a court to "keep confidential all information of the applicant concerning the request for accommodation . . . ." The parties have identified the plaintiff in *Davis I* as Al Davis.

2

King because he was African-American, disabled, and accompanied by a service dog. The parties litigated the matter for a year and nearly agreed to a settlement sometime in 2010. The parties were ultimately unable to settle, however, and the Superior Court dismissed *Davis I* when Murphy failed to appear for an order to show cause hearing in April 2010.

### B. *Clavon*

Shortly after *Davis I* was dismissed, attorney Alex Hartounian filed a lawsuit in federal district court against Roscoe BK on July 2, 2010, entitled *Clavon v. Roscoe BK Restaurant, Inc.,* Case No. 10-cv-04908 JHN-PLAx (*Clavon*). Murphy substituted into the *Clavon* matter in November 2010. The complaint alleged Roscoe BK discriminated against Clavon and others "similarly situated by denying disabled persons of African-American descent full and equal access to defendants' public accommodations while welcoming as guests similarly disabled Caucasian persons[.]" It alleged Herman Clavon III was a disabled African-American who had lost the use of one leg, requiring the use of a wheelchair or crutches. In December 2008, Clavon was asked to eat outside by employees at Burger King on account of his race and disability. *Clavon* alleged causes of action for race and disability discrimination in violation of the Americans with Disabilities Act (ADA; 42 U.S.C. § 12205), the 1964 Civil Rights Act (42 U.S.C. § 2000, et seq.), and the Unruh Civil Rights Act (Civ. Code, §51 et seq.). *Clavon* also asserted claims for the denial of full and equal access in violation of the Disabled Persons Act (Civ. Code, § 54, et seq.) and for intentional infliction of emotional distress.

The district court granted Roscoe BK's motion for summary judgment on the federal and state disability discrimination claims, finding Clavon failed to present sufficient evidence to show he was disabled or that the dog who accompanied him into the Burger King was a service dog. In particular, the district court found no competent evidence to show the dog in question was trained as a service animal based simply on Clavon's declaration that he used the dog to walk and balance by holding on to its leash. There was no indication the dog was specially trained to provide any services for

3

Clavon's particular disability. Further, the alleged service dog license submitted by Clavon appeared to be altered and was not properly authenticated. Indeed, the court noted Plaintiff's counsel admitted the license may not have been for the dog that Clavon brought to the restaurant.

As to the remaining claims, Murphy represented to the district court in a previous hearing that Clavon planned to abandon the federal racial discrimination claim and the emotional distress claim. This left only the state racial discrimination claim to resolve, which the district court found was never plead in the complaint and even if it were, there was no evidence Clavon was discriminated against based on his race.

On October 16, 2012, the district court awarded attorney fees and costs to Roscoe BK. The district court found the lawsuit to be frivolous and Murphy demonstrated bad faith while litigating *Clavon.* The district court noted it was aware of nine similar lawsuits Murphy had filed on behalf of three different plaintiffs. Accordingly, the district court awarded $61,909 in attorney fees and costs to Roscoe BK. It also ordered Murphy to file a motion requesting leave of court before filing any new complaints against Roscoe BK or its employees or agents alleging violations of federal or state disability statutes. The district court's orders were affirmed by the Ninth Circuit. (*Clavon v. Roscoe BK Rest, Inc.* (9th Cir. 2014) 572 Fed. Appx. 487, 490.)[3]

### C. *Davis II*

Three months after *Clavon* was filed by Hartounian, Murphy filed *Davis v. Ma,* No. EDCV 10-01483 VAP (*Davis II*) in federal district court on October 4, 2010. It was based on the same facts as *Davis I* and alleged causes of action for disability discrimination in violation of the ADA and the Unruh Civil Rights Act as well as intentional infliction of emotional distress.

---

[3]     (See Fed. Rules App. Proc., rule 32.1; U.S. Cir. Ct. Rules (9th Cir.), rule 36-3 [governing citation to unpublished opinions].)

4

Roscoe BK moved for summary judgment on November 28, 2011, on similar grounds as in *Clavon.* After a thorough analysis, the district court concluded Davis had failed to establish a triable issue of fact that the puppy was a service dog under federal and state law. It was undisputed the alleged service dog Davis used at the Burger King was a 13-week old Great Dane puppy at the time of the incident. The puppy was unvaccinated and received his rabies shots only three days after Davis attempted to eat at the Burger King. Although the puppy received a service dog tag from the City of Rancho Cucamonga on December 2, 2008, Roscoe BK presented undisputed evidence that the city did not ascertain whether the puppy was trained or whether Davis was a qualified service dog trainer before issuing the service dog tag. Instead, the dog tags were typically given out based on an honor system. Roscoe BK also presented expert testimony that working service dogs are required to be fully vaccinated, which the puppy was not at the time of the incident.

Davis presented evidence that the puppy received a general dog license on February 29, 2009, but testified in a deposition that the dog could not physically assist him in walking or balancing. Nor did Davis present any evidence that his particular disability required the assistance of a service dog. Because there was no violation of federal or state law in refusing to allow Davis' puppy in the restaurant, the district court concluded Davis was unable to sustain his emotional distress claim. As a result, Davis' claims could not survive a motion for summary judgment.

Roscoe BK filed a motion for attorney fees and costs under the ADA's fee-shifting statute in *Davis II.* In the same motion, Roscoe BK sought fees incurred in *Davis I* as permitted by rule 41(d) of the Federal Rules of Civil Procedure, which allows a district court to make an order for the payment of costs of a previously dismissed action based upon the same claim against the same defendant. On March 16, 2012, the district court granted the motion, finding, "the assertion that a thirteen week old puppy is a trained service animal, capable of assisting a person with an ambulatory disability in a place of public accommodation, so flies in the face of common sense that the Court can only

5

conclude Plaintiff's ADA claim lacks any reasonable basis in fact or in law." The district court also found an award of attorneys fees incurred in *Davis* I would further the deterrence of vexatious litigation. The district court's summary judgment was affirmed by the Ninth Circuit. (*Davis v. Ma* (9th Cir. 2014) 658 Fed. Appx. 488, 489.)

## II. Motion to Strike

The district courts' findings in *Davis II* and *Clavon* formed the basis for Roscoe BK's malicious prosecution claim in this action. Murphy moved to strike the complaint under the anti-SLAPP statute on the ground the litigation arose out of protected activity and Roscoe BK did not have a probability of prevailing as a matter of law. Murphy set forth his belief, in a declaration, that each of the claims in *Davis I*, *Davis II,* and *Clavon* were legally tenable at the time he prosecuted the claims because he relied upon his clients' representations about the status of their dogs and observed video footage of their treatment at the Burger King.

Roscoe BK requested the trial court take judicial notice of decisions and filings made in the district court and the Ninth Circuit in *Davis II* and *Clavon,* particularly of the findings that the litigation instituted by Murphy was frivolous and vexatious. Roscoe BK's counsel, Courtney Coates, submitted a declaration listing Murphy's abuse of discovery and other wrongful conduct during the litigation. Coates also set forth the details of another disability discrimination case filed by Murphy, titled *Al Davis v. Avis Partnership,* case No. 09-CV-00580-RGK, in which Coates also represented the defendant. In *Avis*, the plaintiff admitted during trial he altered a San Bernardino County Assistance Dog Certificate to extend the expired service dog license by three years.

The trial court was initially inclined to grant the anti-SLAPP motion, but ultimately took the matter under submission after argument. On October 22, 2014, it issued a revised tentative opinion, denying the motion. It struck a portion of the malicious prosecution claim as to *Davis I,* finding it was not terminated in Roscoe BK's favor. However, the trial court denied the motion as to *Davis II* and *Clavon*, finding Roscoe BK demonstrated a reasonable probability of prevailing. In doing so, the trial

6

court refused to accept as true the findings reached by the district courts, despite Roscoe BK's argument for the application of collateral estoppel. The trial court "only [took] judicial notice of the existence of the [district] court's records and the legal effect of those filings, not the truth of the facts asserted. [¶] In other words, to the extent plaintiff asks this court to accept as true the factual findings made by [the] Judge [in federal court] as to frivolousness, bad faith, and baselessness of attorney Murphy's conduct [in] *Clavon* and then deduce that attorney Murphy also lacked probable cause, the court does not do so. These are not facts which the court may accept as true through judicial notice."

Instead, the trial court found persuasive Coates' and Ma's declarations setting forth the improper discovery and litigation tactics utilized by Murphy in *Davis II* and *Clavon*. By the trial court's estimation, the facts set forth in the declarations were sufficient to demonstrate a lack of probable cause and malice. The trial court subsequently denied Murphy's motion for reconsideration and Roscoe BK's request for monetary sanctions. Murphy timely appealed.

## DISCUSSION

Murphy disputes the trial court's finding that Roscoe BK submitted sufficient evidence to overcome an anti-SLAPP motion. In particular, Murphy contends reasonable lawyers would agree *Davis II* and *Clavon* did not totally lack merit and there was no evidence of malice. Given the low threshold required to overcome an anti-SLAPP motion, however, we find Roscoe BK met its burden and affirm the trial court's order denying the motion.

## I. Applicable Law

The party moving to strike a cause of action under the anti-SLAPP statute has the initial burden to show that the cause of action "aris[es] from [an] act . . . in furtherance of the [moving party's] right of petition or free speech." (§ 425.16, subd. (b)(1).) The

7

burden then shifts to the opposing party to demonstrate the "probability that the plaintiff will prevail on the claim." (*Ibid*.)[4] The parties do not dispute this first prong is satisfied.

To satisfy the second prong, "the plaintiff must 'state[] and substantiate[] a legally sufficient claim.' [Citation.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."' [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741, fn. omitted.) Courts have held the opposition to an anti-SLAPP motion needs to meet only a "minimum level of legal sufficiency and triability." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5.)

Whether Roscoe BK has established a prima facie case is a question of law. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) As a result, we review an order denying a special motion to strike de novo. (*GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 150 (*GetFugu*).) In doing so, we consider "'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Ibid*.)

To prevail on a malicious prosecution claim, the plaintiff must demonstrate: (1) the prior action was begun or maintained by the defendant; (2) was terminated in the plaintiff's favor; (3) was prosecuted without probable cause; and (4) was initiated with malice. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 970; *Sheldon Appel Co. v. Albert &*

---

[4] Section 425.16, the anti-SLAPP statute, provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

8

*Oliker* (1989) 47 Cal3d 863, 871 (*Sheldon Appel Co.*).)  The existence or absence of probable cause is a question of law to be determined by the court from the facts established in the case.  (*Sheldon Appel Co., supra,* 47 Cal.3d at p. 875.)  Thus, the court must determine, in light of the facts known to counsel, "whether any reasonable attorney would have thought the claim tenable."  (*Id.* at p. 886.)  "A litigant will lack probable cause for his action if he relies upon facts which he has no reasonable cause to believe to be true, or seeks recovery upon a legal theory which is untenable under the facts known to him."  (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 568.)  "This is an objective standard, and does not take into account the subjective mental state of the defendant; if the underlying claims were objectively tenable, the malicious prosecution claim fails, regardless of any evidence of malice on the part of the defendant."  (*Silas v. Arden* (2012) 213 Cal.App.4th 75, 90.)

Malice in connection with a malicious prosecution claim "'relates to the *subjective intent or purpose* with which the defendant acted . . . .'"  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 (*Soukup*).)  Malice "'may range anywhere from open hostility to indifference'"; it is not limited to "'ill will toward plaintiff but exists when the proceedings are [prosecuted] primarily for an improper purpose.'"  (*Ibid.; accord, Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1157.)  As an element of  malicious prosecution, malice "reflects the core function of the tort, which is to secure compensation for harm inflicted by misusing the judicial system, i.e., using it for something other than to enforce legitimate rights and secure remedies to which the claimant may tenably claim an entitlement."  (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 452, italics omitted; *Lanz v. Goldstone* (2015) 243 Cal.App.4th 441, 466-467.)  Although lack of probable cause alone does not automatically equate to a finding of malice, it is a factor that may be considered:  "'[m]alice may still be inferred when a party knowingly brings an action without probable cause.  [Citations.]'  [Citation, italics omitted.]"  (*Ross v. Kish* (2006) 145 Cal.App.4th 188, 204; *Soukup, supra*, 39 Cal.4th at p. 292.)

## II.  Analysis

### A.  Roscoe BK Has Made a Prima Facie Case For its Malicious Prosecution Claim

The primary issue we address in this matter is whether Roscoe BK presented evidence in opposition to Murphy's anti-SLAPP motion that, if believed by the trier of fact, was sufficient to support a judgment in its favor on the malicious prosecution claim. The parties do not dispute that the prior actions were begun or maintained by Murphy and that they were terminated in Roscoe BK's favor. Therefore, we are concerned only with the third and fourth elements of a malicious prosecution claim—lack of probable cause and malice. Given the "minimum level of legal sufficiency and triability" that a plaintiff must demonstrate, we find Roscoe BK made the requisite showing. (*Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at p. 438, fn. 5.)

#### 1.  *Davis II*

In *Davis II*, Coates submitted in his declaration that, "Although *Davis II* was not overly complex, it had significant legal and factual challenges caused by Attorney Murphy abusing discovery and failing to reasonably concede the uncontroverted fact that his admittedly untrained, unvaccinated 13-week old puppy was not a service animal under the ADA." Coates further stated, "For a year, Mr. Murphy frivolously and unreasonably refused to promptly disclose the alleged service dog for examination as required under Rule 26" even though "Murphy was required to produce evidence that the young puppy was a qualified service animal. Yet Plaintiff refused to concede that his young puppy was too young, immature, and not yet sufficiently trained to meet the ADA requirements." Ma set forth in his declaration that the service dog used during Davis' visit to the Burger King in December 28, 2008, "was actually a 13-week old, untrained puppy that had not even been vaccinated for rabies." If the trier of fact credits this evidence, it would be sufficient to establish that Murphy lacked probable cause to proceed with a disability discrimination claim because his client did not use a service dog within the meaning of the ADA.

A prima facie case of malice was shown by Ma's declaration that Murphy threatened him with further litigation if Roscoe BK failed to settle with them in *Davis I.* Ma recounted "Mr. Murphy sought hundreds of thousands of dollars and made harassing threats to file more lawsuits against me and my employees, if we did not acknowledge wrongdoing and settle the litigation." Ma indicated Murphy followed through on his threats by filing *Davis II* and *Clavon* against him and Roscoe BK.

Murphy contends the video evidence of his client's treatment by Burger King employees coupled with a doctor's prescription for a service dog for Davis' back disability is sufficient to establish probable cause to file the lawsuit. Even if we agree this was sufficient to initiate the lawsuit, however, it ignores the evidence showing a lack of probable cause to continue the lawsuit. Importantly, Murphy does not dispute the fact that the alleged service dog was a 13-week old untrained and unvaccinated puppy.[5]

Murphy instead insists the puppy was in the process of being trained to assist Davis to walk and balance. Murphy contends California law permits individuals to take dogs to public places for the purpose of training them. (Civ. Code, § 54.2, subd. (b).)[6] However, Davis' declaration[7] stated he was training his dog in December 2008 "to be my service dog and provide stability when walking." He elaborated, "In December of 2008 I went to defendants' Burger King restaurant to eat, and I had my service dog in-training

---

[5]     At oral argument, counsel intimated a 13-week old puppy cannot be vaccinated. There is no evidence to support this proposition. The record instead shows the puppy received its rabies vaccine three days after it accompanied Davis to the Burger King. In any case, there is no dispute the puppy was untrained at the time.

[6]     Civil Code section 54.2, subdivision (b) provides in pertinent part: "individuals with a disability and persons who are authorized to train service dogs for the individuals with a disability may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in Section 54.1 [of public accommodation.]"

[7]     In connection with Murphy's motion for reconsideration, the trial court took judicial notice of Davis' declaration opposing summary judgment in *Davis II.*

11

Barack with me." There is no indication from Davis' declaration that Davis entered the Burger King with the intent to train his alleged service dog or that he was qualified to do so. Moreover, the complaint in *Davis II* does not identify Civil Code section 54.2 as a basis for his claims. Instead, it specifies the ADA and the Unruh Civil Rights Act as the causes of action on which his claims are based. Federal law defines a "service animal" as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability." (28 C.F.R. § 36.104.) It is undisputed the puppy was not so "trained."

In any case, the evidence Murphy presents to contradict a prima facie showing of lack of probable cause and malice is inconsequential to our analysis at this stage of the proceedings. This is because we neither """"weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]'" (*GetFugu, supra,* 220 Cal.App.4th at p. 150.) The evidence submitted by Murphy does not defeat Roscoe BK's as a matter of law. Taking Roscoe BK's evidence as true, as we must, we conclude the declarations made by Coates and Ma reveal a "minimum level of legal sufficiency and triability" to withstand a special motion to strike under the anti-SLAPP statute. (*Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at p. 438, fn. 5.)

### 2. *Clavon*

Roscoe BK likewise sets forth a prima facie showing of lack of probable cause and malice in Murphy's prosecution of *Clavon's* racial and disability discrimination claims. As to the disability claim, Coates submitted a declaration indicating Clavon "neither disclosed nor produced any documents supporting his claim that he was, in fact, disabled in December 2008. In fact, Murphy refused to produce any medical records, reports, prescriptions, and any other documents whatsoever showing the nature, extent, and duration of [Clavon's] alleged disability." If the trier of fact credits this evidence, it would be sufficient to establish that Murphy lacked probable cause to proceed with a

12

disability discrimination claim on behalf of a plaintiff who failed to demonstrate he was disabled at the time of the incident, requiring a service animal. Murphy contends Clavon's disability was "apparent" to him because he had personal knowledge Clavon did not have the use of one of his legs. This evidence, however, does not defeat as a matter of law Roscoe BK's contention that there was no evidence Clavon's disability required a service animal. It instead would require us to weigh the evidence, which we may not do. (*GetFugu, supra,* 220 Cal.App.4th at p. 150.)

As to Clavon's racial discrimination claim, the district court noted in its summary judgment order, of which the trial court took judicial notice, that Murphy had represented he would abandon the claim. Coates affirmed, "[a]t the Pre-Trial Conference, Murphy represented that he would be abandoning his federal and state race discrimination claim under Title II of the Civil Rights Act of 1964 and Unruh Act. Murphy also represented that he would be abandoning his tort claim for intentional infliction of emotional distress." If Murphy had truly abandoned the racial discrimination claim, it seems to us the motion to strike would properly be granted as to this claim because it was not terminated in Roscoe BK's favor, similar to *Davis I.* (See *Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 48.)

Murphy, however, continues to assert Clavon had a valid race claim under the 1964 Civil Rights Act. Murphy contends on appeal that a case was made for a discrimination claim because it was "undisputed Clavon is an 'African American'" who "'grew-up in the South before the 1964 civil rights movement, [being] routinely segregated at restaurants that insisted he eat outside.'" These facts alone, however, are insufficient to establish a racial discrimination claim. Here, Clavon's declaration expressly showed he was denied service at Burger King due to his dog. There was no evidence in his declaration showing he was denied service due to his race, despite the fact he was obviously African American. In any case, it may be inferred from Murphy's intention to abandon the racial discrimination claim that there was no evidence to pursue such a claim.

13

Moreover, Murphy's attempt to maintain his racial discrimination claim, despite assurances to the contrary to the district court, further supports a finding of malice. Coupled with the evidence of his threats to Ma, as described above, malice may be inferred from Murphy's attempt to secure remedies to which Clavon is not entitled.

### 3. Judicial Notice of Prior Court Records is Limited

Further support for the denial of the anti-SLAPP motion may be found with the filings in the prior lawsuits. The parties dispute whether to credit the district courts' and the Ninth Circuit's decisions in *Davis I* and *Clavon,* particularly the findings that the lawsuits were frivolous and the litigants vexatious. Roscoe BK contends these findings alone are sufficient to establish a prima facie case for malicious prosecution. Murphy contends the federal courts' findings in *Davis II* and *Clavon* may not be taken as true. We agree with Murphy's position. (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1569-1570 (*Sosinsky*).) In *Sosinsky,* the trial court properly refused to take judicial notice of the truth of factual assertions and factual findings appearing in prior court documents. (*Ibid.*)

The *Sosinsky* court reasoned, "While we have no quarrel with the fact that a judge, after hearing a factual dispute between litigants A and B, may choose to believe A, and make a finding of fact in A's favor, and while we have no quarrel that at some subsequent time it may be proper to take judicial notice that the judge did in fact make that particular finding in favor of A, the taking of judicial notice that the judge made a particular factual finding is a far cry from the taking of judicial notice that the 'facts' found by the judge must necessarily be the true facts, i.e., must necessarily be 'the truth.' To state this a bit more simply, the taking of judicial notice that the judge believed A (i.e., that the judge ruled in favor of A on a particular factual dispute) is different from the taking of judicial notice that A's testimony must necessarily have been true simply because the judge believed A and not B." (*Sosinsky, supra,* 6 Cal.App.4th at p. 1565; contra, *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1191.)

Although we may not take the district courts' findings as the truth in this matter, this does not mean we are obligated to completely ignore them. We agree with the trial court that judicial notice may be taken of the existence of the district courts' records and the legal effect of those orders. (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 130, fn. 7.) These prior court records show Murphy prosecuted three racial and disability discrimination actions against Roscoe BK based on substantially the same facts. *Davis II* and *Clavon* were terminated by summary judgment. Attorneys fees were awarded under the ADA's fee shifting statute on the ground the allegations were "frivolous, unreasonable, or without foundation." (42 U.S.C. § 12205.) Further, a pre-filing order was issued in *Clavon* which required Murphy, not his client, to seek permission from the district court before filing any similar discrimination lawsuits against Roscoe BK due to his "pattern of vexatious conduct." Coupled with the evidence described above, these orders present a prima facie case sufficient to overcome an anti-SLAPP motion.

**B. Roscoe BK's Unfair Business Practices is Not Barred by the Litigation Privilege**

Murphy contends Roscoe BK's unfair business practices claim under Business and Professions Code section 17200 is barred by the litigation privilege, relying on *American Products Co., Inc. v. Law Offices of Geller, Stewart & Foley, LLP* (2005) 134 Cal.App.4th 1332, 1336 (*APC*). The litigation privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. (Civ. Code, § 47, subd. (b).) "The litigation privilege is absolute; it applies, if at all, regardless whether the communication was made with malice or the intent to harm. [Citation.] Put another way, application of the privilege does not depend on the publisher's 'motives, morals, ethics or intent.' [Citation.] Although originally applied only to defamation actions, the privilege has been extended to *any* communication, not just a publication, having 'some relation' to a

15

judicial proceeding, and to *all* torts other than malicious prosecution. [Citations.]" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 912-913 (*Kashian*).)

"'[The] absolute privilege exists to protect citizens from the threat of litigation for communications to government agencies whose function it is to investigate and remedy wrongdoing. [Citation.] The privilege is based on "[t]he importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity." [Citation.]' [Citation.]" (*Kashian, supra,* at pp. 912-913.) "If there is no dispute as to the operative facts, the applicability of the litigation privilege is a question of law. [Citation.] Any doubt about whether the privilege applies is resolved in favor of applying it. [Citation.]" (*Ibid.*)

It is undisputed the litigation privilege does not apply to a malicious prosecution action. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 216.) The parties dispute, however, whether the litigation privilege extends to an unfair competition claim which is based on allegations of malicious prosecution. We find the litigation privilege does not apply in this instance. This is because the unfair competition law borrows violations of other laws and treats them as unlawful practices. (*People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267 (*Persolve*).) Courts have thus found exceptions to the litigation privilege based on irreconcilable conflicts between the privilege and other coequal state laws. (*Id.* at p. 1274.)

In *Persolve*, the court held an unfair competition claim was not barred by the litigation privilege where the underlying violation upon which the Business and Professions Code section 17200 claim was based was not subject to the privilege. (*Persolve,* at p. 1274.) Murphy attempts to distinguish *Persolve* on the basis that the underlying violation in that case involved a statute whereas Roscoe BK's unfair competition claim is not borrowed from any statute. We fail to see why we should make that distinction. It is clear that malicious prosecution is not barred by the litigation privilege. Unfair competition claims based on malicious prosecution allegations should similarly be free from the litigation privilege.

16

## DISPOSITION

The order denying the anti-SLAPP motion is affirmed. Roscoe BK to recover its costs on appeal.

BIGELOW, P.J.

We concur:

RUBIN, J.

FLIER, J.