[No. G018379. Fourth Dist., Div. Three. Apr. 23, 1996.]

HUGHES AIRCRAFT COMPANY, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
CYNTHIA PURIFOY et al., Real Parties in Interest.

**COUNSEL**

O'Melveny & Myers, Gordon E. Krischer, Larry A. Walraven and Michael C. Ray for Petitioner.

No appearance for Respondent.

David M. Harney, Mark P. Robinson, Thomas Kallay and Robert H. Pourvali for Real Parties in Interest.

**OPINION**

**SONENSHINE, J.**—Cynthia Purifoy, Kathleen King, Becky Allan and Vera Sanchez sued Hughes Aircraft Company seeking damages for work injuries incurred from exposure to various chemical substances while working at the Fullerton facility as office employees. They concede Labor Code section

3602 et seq.[1] is the exclusive remedy for work-related injuries but maintain because Hughes fraudulently concealed the existence and cause of their injuries, they come within the purview of section 3602, subdivision (b)(2). The trial court agreed and denied Hughes's motion for summary judgment. We conclude the trial court erred in denying the motion.

I

King and the other three plaintiffs whom she supervised worked in building 607, approximately 50 feet from the manufacturing department. In 1992, they began experiencing headaches, sore throats, fatigue, sinus problems, chest pain and voice loss. In February 1993, King returned to work after suffering from a respiratory illness. Within a few hours, she again began coughing and experiencing difficulty in breathing.

King contacted John Gallucci at Hughes's health and safety department. After confirming she worked near the manufacturing division, Gallucci told her there had been similar complaints from other employees whose work stations were also in that area. King then reported her injuries to the company's medical center. Hughes did not advise King or any of the other plaintiffs about their work environment or the cause of their injuries. However, after the plaintiffs requested their offices be moved, King, Allan and Sanchez were relocated to building 617 until March 5, when they were told to return to building 607. They were advised their former offices were safe because cooling towers had been drained and, after an excessive amount of certain chemicals was found, had been filled with clean water.

This did not prove to be an adequate solution. The plaintiffs' health continued to decline. King and Purifoy sought emergency room treatment for respiratory distress. Purifoy was placed on disability and diagnosed with asthma, upper airway irritation and dysphonia. Allan also got worse. On April 22, she complained to the Hughes Medical Center of headaches and burning eyes. She was told to take a walk outside if the headaches continued.

The plaintiffs filed the underlying action. After answering the complaint with a general denial, Hughes filed a motion for summary judgment alleging the plaintiffs failed to come within the exception of section 3602, subdivision (b)(2). The trial court disagreed and denied the motion. Hughes sought writ relief, contending it was entitled to summary judgment, or in the alternative, summary adjudication of issues. We issued an alternative writ and heard oral argument.

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

## II

██ "As a general rule, an employee injured in the course of employment is limited to remedies available under the Workers' Compensation Act." (*Davis* v. *Lockheed Corp.* (1993) 13 Cal.App.4th 519, 521 [17 Cal.Rptr.2d 233].) Section 3602, subdivision (b)(2) provides an exception: "Where the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, . . . the employer[] [is liable but only for] . . . damages proximately caused by the aggravation. . . ."

Thus, before an employer may be liable under section 3602, subdivision (b)(2), the employee must establish the existence of three conditions: (1) the employer concealed "the existence of the injury," (2) the employer concealed the connection between the injury and the employment, and (3) the injury is aggravated, following this concealment. ██ Defendant is entitled to summary judgment upon a showing "that one or more elements of the cause of action, . . . cannot be established" unless plaintiff meets the burden of showing "that a triable issue of one or more material facts exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (o)(2).) Here, it is undisputed Hughes first learned of plaintiffs' injuries from plaintiffs themselves. Therefore, plaintiffs will be unable to prove defendant concealed the existence of their injuries and will be unable to prevail.

██ Plaintiffs maintain they may recover, even though they first told Hughes of their injuries because Hughes knew the work environment was unsafe but failed to advise them of the cause of their injuries.[2] The trial court agreed with plaintiffs, concluding, "Triable issues of fact exist as to whether . . . Hughes knew plaintiffs' symptoms were caused by toxic chemical exposure in and about [its] manufacturing plant." The court explained it could not precisely fulfill the mandates of Code of Civil Procedure section 437c, subdivision (g), because plaintiffs "do not dispute moving party's

---

[2]The plaintiffs alleged the following:

1. Hughes was aware in 1987 that chemicals used in connection with degreasing activities caused its Buena Park employees to suffer irritated mucous membranes and headaches.

2. Hughes was aware in 1987 that adequate ventilation was necessary to protect employees from overexposure to chemicals used in connection with degreasing activities at its Buena Park facility.

3. In 1990, the Buena Park manufacturing process was transferred to Fullerton, building 607, third floor, where by 1992 the number of degreasers had increased to 18 but no steps had been taken for more adequate ventilation.

4. In 1993, Hughes was aware that 291 employees in buildings 607 and 617 were complaining of headaches, sore throat, lightheadedness, shortness of breath, nasal congestion, chest pain, cough, palpitations and watery eyes.

facts. They do dispute the conclusions moving party arrives at." The trial court found Hughes missed the point by arguing it could not have concealed the injuries because it did not have prior knowledge. "Plaintiffs, of course, would be aware of the symptomatology before defendant, but they may not ever know that the symptoms were the result of toxic chemical exposure." For reasons we now explain, the trial court should have granted summary judgment.

## III

Section 3602, subdivision (b)(2) does not impose liability on an employer for injuries resulting from either the failure to provide a safe work environment or from failure to warn of unsafe premises. (See § 4553.) Hughes's alleged prior knowledge of the safety of its workplace is insufficient by itself to establish liability. The statute permits an employee to recover damages for aggravation to work-related injuries only when the employer *has concealed both the existence of the injury and its work relationship*. Section 3602, subdivision (b)(2) is inapt here because there is no evidence to support a finding Hughes knew about the injuries before being told by plaintiffs.

Our analysis begins with *Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758], decided before the enactment of section 3602, subdivision (b)(2). There the plaintiff alleged his employer had fraudulently concealed the existence of an unsafe work environment, the resulting risk of harm, his eventual contracting of the disease, and its environmental cause.[3] The court framed the question as follows: "whether an employee is barred by the [workers' compensation] provisions from prosecuting an action at law against his employer for the intentional torts of fraud and conspiracy in knowingly ordering the employee to work in an unsafe environment, concealing the risk from him, and, after the employee had contracted an industrial disease, deliberately failing to notify [him,] . . . thereby aggravating the consequences of the disease." (27 Cal.3d at p. 468.) The court concluded, "[W]hile the workers' compensation law bars the employee's action at law for his initial injury, a cause of action *may exist for aggravation of the disease because of the employer's fraudulent concealment of the condition and its cause.*" (*Id.* at p. 469, italics added.)

In response to *Johns-Mansville*, the Legislature enacted section 3602, subdivision (b)(2), which the Supreme Court first interpreted in *Foster* v.

---

[3]Because the *Johns-Manville* court reviewed a motion for judgment on the pleadings, it devoted little attention to the alleged facts, focusing instead on the sufficiency of plaintiff's pleadings.

*Xerox Corp.* (1985) 40 Cal.3d 306 [219 Cal.Rptr. 485, 707 P.2d 858]. Foster alleged he suffered symptoms of arsenic poisoning after working for Xerox for 11 years. Xerox, which knew of his injury, never warned him of the work environment dangers and even after he reported his condition, failed to tell him the disease was connected to his employment and would be aggravated by continued exposure. The employer demurred, maintaining the statutory definition of fraudulent concealment applies only when an employer affirmatively represents the employee is injury free. The court disagreed, concluding statutory liability may be premised on an employer's mere failure to reveal its knowledge of the cause of the employee's injury and its relationship to the work environment. "It is unassailable that an employer who knows that an employee has contracted a disease in the course of his employment has a duty to advise the employee of that fact." (*Id.* at p. 310.)

 *Foster* also implicitly affirms the rule that *actual knowledge* of the injury is a sine qua non for section 3602, subdivision (b)(2) liability. "Such knowledge is essential to establish a claim under subdivision (b)(2) because defendant obviously could not be charged with concealing matters which it did not know." (*Foster* v. *Xerox Corp., supra,* 40 Cal.3d 306, 312.) *Santiago* v. *Firestone Tire & Rubber Co.* (1990) 224 Cal.App.3d 1318, 1331, 1335 [274 Cal.Rptr. 576], emphasizes the *actual* knowledge requirement, stating neither constructive nor imputed knowledge is sufficient to trigger statutory liability.

*Davis* v. *Lockheed Corp., supra,* 13 Cal.App.4th 519 is particularly instructive. There the employee was diagnosed with cancer after a 30-year exposure to various chemicals. After radiation therapy, he returned to work, telling Lockheed's medical department about his illness. A few years later, when the cancer returned, Davis sued, alleging Lockheed was liable for the aggravation of his cancer following his return to work because it failed to tell him about the dangerous work environment.

The Court of Appeal affirmed the trial court's grant of a summary judgment, noting, "Unlike *Johns-Manville*[] [and] *Foster*[,] . . . this is . . . an appeal from a summary judgment and the question is whether the evidence, not bare allegations, supports [the] judgment." (*Davis* v. *Lockheed Corp., supra,* 13 Cal.App.4th 519, 522.) "[I]t is clear that Lockheed did not learn of [the employee's] illness until after he returned to work in late 1981 and no one at Lockheed knew at that time that there was any connection between his illness and his exposure at work to asbestos or other chemicals. There is nothing at all in the record to suggest that Lockheed withheld *any* information relevant to Davis's condition or its aggravation after he returned to work." (*Id.* at p. 523, original italics.)

Applying the above principles to our facts, we conclude the trial court erred in denying the motion for summary judgment. Contrary to the court's statement, Hughes's prior knowledge of its unsafe work environment and the potential risks to its employees, even if it could be proven, would be insufficient to establish section 3602, subdivision (b)(2) liability. The first consideration is whether there are triable issues of fact concerning Hughes's *actual prior knowledge of plaintiffs' injuries*. Only if the answer is yes would the court consider whether the employer concealed those injuries and their relationship to the work environment from plaintiffs. It is not enough for plaintiffs to rely on evidence from which a trier of fact might conclude Hughes should have known of plaintiffs' injuries before they were reported; only evidence of actual knowledge would raise an issue of fact precluding the grant of summary judgment. Because the plaintiffs failed to establish any triable issues regarding Hughes's actual prior knowledge of their injuries, the trial court had no choice but to grant the summary judgment motion.

Let a writ of mandate issue directing the trial court to vacate the orders denying summary judgment and summary adjudication of issues and grant the motion for summary judgment.

Wallin, Acting P. J., and Rylaarsdam, J., concurred.