**Ron RODRIGUEZ, et al., Plaintiffs,**

v.

**UNITED AIRLINES, INC., et al., Defendants.**

**No. C 13–2987 PJH**

United States District Court, N.D. California.

Filed November 27, 2013

---

Thomas Franklin Friedberg, Law Offices of Friedberg and Bunge, San Diego, CA, for Plaintiffs.

Caitlin C. Ross, Gregory Charles Read, James Landon Mink, Michael Louis Fox, Sedgwick LLP, San Francisco, CA, Jeffrey George Jacobs, Law Office Jeffrey G. Jacobs, Irvine, CA, for Defendants.

## ORDER GRANTING MOTIONS TO DISMISS

PHYLLIS J. HAMILTON, United States District Judge

Defendants' motions to dismiss the first amended complaint came on for hearing before this court on November 20, 2013. Plaintiffs appeared by their counsel Thomas F. Friedberg; defendant United Airlines, Inc. appeared by its counsel Michael L. Fox; and defendant Leading Edge Aviation Services, Inc. appeared by its counsel Jeffrey G. Jacobs. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motions as follows.

## BACKGROUND

In this personal injury case, plaintiffs Ron Rodriguez, Lawrence McClarty, Martin Dergen, Tony Cappabianca, Romulado Alvarez, Eric Driggs, Randy Maddox, Brian Sullivan, John Cho, Donald Hegelsen, Roy Jensen, John Ross, and Steve Lewandowski filed suit against defendants United Airlines, Inc. ("United") and Leading Edge Aviation Services, Inc. ("Leading Edge") in May 2013. Plaintiffs allege that they were injured in the workplace by exposure to hexavalent chromium.

Defendants removed the case to this court, asserting jurisdiction based on federal defenses, and then moved to dismiss the original complaint for failure to state a claim. The court granted the motions, with leave to amend to allege facts supporting the elements of the claims.

Plaintiffs were employed by United as aircraft mechanics. They allege that beginning in about 1998, United developed a maintenance program for repairs to the F117, a United States Air Force ("USAF") aircraft. As part of this maintenance program, United developed procedures for repairs to the F117, including the inlet cowl assembly. These repairs included sanding the F117 nose inlet cowls to remove paint and primer. In order to accomplish this work, United set up a sanding booth at its San Francisco Maintenance Center.

Each of the plaintiffs asserts that he was assigned to work in the United sanding booth, 1–3 times a week, for up to four hours at a time, using a power orbital sander to remove the gray paint and the green primer from the nose inlet cowls. Plaintiffs claim that the green primer used

on the F117 inlet cowls contained hexavalent chromium, and that the sanding caused hexavalent chromium particles to become airborne. Plaintiffs allege that from 2003 until June 11, 2011, they were exposed to higher than Permissible Exposure Limit of hexavalent chromium, and that United failed to provide sufficient protective gear, such as appropriate HEPA filters, and failed to provide vacuums to remove the carcinogenic dust before it could reach the workers' faces.

Plaintiffs contend that hexavalent chromium is a known carcinogen that can cause lung cancer if inhaled at sufficient concentrations, and can also adversely affect the respiratory tract and the skin and eyes. They assert that United was aware of the toxicity of hexavalent chromium from the relevant Material Safety Data Sheet, and that it employed individuals whose job it was to monitor hexavalent chromium exposure. Each of the 13 plaintiffs alleges a cause of action against United, asserting the fraudulent concealment exception to California Labor Code § 3602(b)(2).

In addition to the claims asserted against United, five of the plaintiffs (Rodriguez, Dergen, Driggs, Maddox, and Sullivan) also each allege a cause of action for negligence against Leading Edge. They assert that following United's receipt of a violation notice from Cal–OSHA on June 20, 2011, for knowing exposure of its workers to carcinogenic levels of hexavalent chromium, United suspended its sanding operations at the San Francisco Maintenance Center, and subcontracted the work to Leading Edge.

Plaintiffs allege that from June 20, 2011, until September 2011, Leading Edge sanded the nose inlet cowls while the nose inlet cowels were in the crates; that Leading Edge then shipped the crates containing the sanded nose inlet cowls back to United, where plaintiffs Rodriguez, Dergen, Driggs, Maddox, and Sullivan were tasked with opening the crates; and that when they did so, they were further exposed to carcinogenic levels of hexavalent chromium.

Defendants now seek an order dismissing the FAC for failure to state a claim.

## DISCUSSION

### A. Legal Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1199–1200 (9th Cir.2003). Review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir.1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 895, 899–900 (9th Cir.2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The allegations in the complaint "must be enough to raise a right to relief above the

speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations and quotations omitted).

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See id.* at 558–59, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. 1937. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. *See Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir.2005).

In actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). Under Rule 9(b), "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001) (citation and quotations omitted).

## B. United's Motion

United argues that the fraudulent concealment claims asserted against it by each of the plaintiffs must be dismissed for failure to state a claim.

■ "[A]n employee injured during the course of employment is generally limited to remedies available under the Workers' Compensation Act." *Jensen v. Amgen, Inc.*, 105 Cal.App.4th 1322, 1325, 129 Cal. Rptr.2d 899 (2003). An employee who suffers an injury in the course of his employment may recover damages in an action at law only if he comes within certain exceptions to the workers' compensation law. *Foster v. Xerox Corp.*, 40 Cal.3d 306, 308, 219 Cal.Rptr. 485, 707 P.2d 858 (1985); *see also Silas v. Arden*, 213 Cal.App.4th 75, 91, 152 Cal.Rptr.3d 255 (2012).

One of these exceptions is embodied in Labor Code § 3602(b)(2). Under this exception, "an employee ... may bring an action at law for damages" against his/her employer "[w]here the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation." Cal. Lab. Code § 3602(b)(2).

■ Thus, to recover under the fraudulent concealment exception, the plaintiff must prove that the employer knew of the plaintiff's work-related injury, that the employer concealed the knowledge from the plaintiff, and that the injury was aggravated as a result of such concealment. *Foster*, 40 Cal.3d at 312, 219 Cal.Rptr. 485, 707 P.2d 858. If one of those conditions is lacking, the exception does not apply and the employer is entitled to judgment in its favor. *Hughes Aircraft Co. v. Superior Court*, 44 Cal.App.4th 1790, 1797, 52 Cal. Rptr.2d 514 (1996).

■ The term "fraudulent concealment" as used in Labor Code § 3602(b)(2) has the same meaning as in California Civil Code §§ 1709 and 1710. *See Foster*, 40 Cal.3d at 309–10, 219 Cal.Rptr. 485, 707 P.2d 858; *see also* 2 Witkin, *Summary of California Law* (10th ed. 2005), Workers Compensation § 45. Under California

law, the elements of fraudulent concealment are

(1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage.

*Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1156 n. 3 (9th Cir.2000).

In federal court, Rule 9(b) requires that facts showing fraudulent concealment, like other fraud claims, be pled with specificity. *Grant v. Aurora Loan Services Inc.,* 736 F.Supp.2d 1257, 1273 (C.D.Cal.2010); *see also Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103–06 (9th Cir.2003). Mere conclusory allegations of fraud are insufficient. *Moore v. Kayport Package Express,* 885 F.2d 531, 540 (9th Cir.1989).

United argues that the claims against it must be dismissed because plaintiffs have failed to allege facts supporting the required elements of the fraudulent concealment exception in Labor Code § 3602(b)(2), including United's knowledge of the injury, United's concealment of the injury, and the resulting aggravation of the injury; and have also failed to allege the elements of fraudulent concealment with specificity. In particular, United argues that the facts alleged are insufficient as a matter of law under *Hughes* to show that United concealed knowledge of the plaintiffs' injuries.

In *Hughes,* four employees sued their aircraft company employer for work injuries incurred from exposure to various chemical substances at the workplace. They experienced headaches, sore throats, fatigue, sinus problems, chest pain and voice loss. One of the plaintiffs reported her injuries to the company's medical center, but the employer did not advise the plaintiffs about their work environment or the cause of their injuries, and the plaintiffs' health continued to decline. *Id.,* 44 Cal.App.4th at 1792–93, 52 Cal.Rptr.2d 514.

The plaintiffs filed a civil action, and the employer moved for summary judgment, arguing that the plaintiffs' claims failed to come within the § 3602(b)(2) exception. *Id.* at 1793, 52 Cal.Rptr.2d 514. The trial court denied the motion, but the Court of Appeal reversed. The court found that the facts presented by the plaintiffs could never successfully state a claim: "Here, it is undisputed [that the defendant employer] first learned of plaintiffs' injuries from plaintiffs themselves. Therefore, plaintiffs will be unable to prove defendant concealed the existence of their injuries and will be unable to prevail." *Id.* at 1794, 52 Cal.Rptr.2d 514.

■ The fundamental problem for the *Hughes* plaintiffs was that the defendant employer did not learn of the plaintiffs' injuries until the plaintiffs told their employer. A defendant "obviously [cannot] be charged with concealing matters about which it did not know." *Foster,* 40 Cal.3d at 312, 219 Cal.Rptr. 485, 707 P.2d 858. That is, an employer cannot conceal an injury if the plaintiff himself tells the employer about the injury. For this reason, "[t]he exception does not apply where the employee was aware of the injury at all times." *Silas,* 213 Cal.App.4th at 91, 152 Cal.Rptr.3d 255 (citing *Jensen,* 105 Cal. App.4th at 1326, 129 Cal.Rptr.2d 899).

■ United argues that this is what the plaintiffs allege here. The FAC asserts that "Plaintiffs reported to their supervisors at United that they were experiencing injuries in the form of irritation to their nose, throat, lungs, eye and skin while at work." FAC ¶ 10. United contends that even if this allegation were sufficiently plausible and particular with regard to

plaintiffs' alleged injuries, California law bars an employer's liability under the fraudulent concealment exception when the employer first learns of the injury from the plaintiff.

To state a claim under the § 3602(b)(2) exception, a plaintiff must allege actual knowledge of both "the existence of the injury and its connection with the employment." *Jensen,* 105 Cal.App.4th at 1328, 129 Cal.Rptr.2d 899 (citing *Hughes,* 44 Cal. App.4th at 1795, 52 Cal.Rptr.2d 514). Thus, United asserts, if—as plaintiffs allege in the FAC—plaintiffs told United about their injury, they necessarily knew about the injury. And if they already knew about the injury, United could not have concealed the existence of the injury from them. Accordingly, United contends, the FAC fails to allege a required element of the fraudulent concealment exception cause of action.

United argues that plaintiffs have incorrectly conflated "exposure" with "injury." For example, plaintiffs allege in the FAC that "United ... failed to advise [p]laintiffs that the injuries to their respiratory system and exposed skin, including the risk of cancer, was occurring each time [p]laintiffs were exposed to [h]exavalent [c]hromium." FAC ¶ 14. Under the heading, "United's Knowledge of Injury," plaintiffs allege that United

> was aware that [p]laintiffs' [sic] were being exposed to levels of [h]exavalent [c]hromium dust in amounts significantly greater than the Action Levels and PEL, that [p]laintiffs' [sic] had sustained injuries to their respiratory systems and exposed skin due to the exposure, that [p]laintiffs' [sic] complained to their supervisors at United of their injuries, that United concealed from [p]laintiffs' [sic] that their injuries were caused by the exposure and that the continuous and

repeated re-exposure was aggravating their injuries.

FAC ¶ 17.

Again, under the heading, "United's Concealment of Potential for Work–Related Injury," plaintiffs allege that "United concealed that repeated re-exposure to excessive levels of [h]exavalent [c]hromium dust without appropriate engineering controls and personal protective equipment had initially caused each [p]laintiffs' [sic] injuries. FAC ¶ 18. United argues that "Concealment of Potential for Work–Related Injury" is simply a synonym for "exposure"—which is not the same thing as "injury," and cannot be used to support the § 3602(b)(2) exception.

With regard to the third element of the "fraudulent concealment" exception, United argues that plaintiffs never allege the required "aggravation" element—that their injuries were aggravated by United's concealment of those injuries. United notes that plaintiffs use the word "aggravated," *see, e.g.,* FAC ¶ 15, but the referenced "aggravation" is simply more of the same alleged injury.

In opposition, plaintiffs argue that the complaint satisfies the pleading requirements for stating a claim under the fraudulent concealment exception, as set forth in the *Foster* decision. In that case, an injured employee filed a complaint against his employer seeking to recover damages. The complaint alleged that defendant knew plaintiff had contracted arsenic poisoning from his employment and had concealed that knowledge from him, thereby aggravating his illness. The defendant demurred to the complaint on the ground that it was barred by § 3602, and the trial court sustained the demurrer without leave to amend.

The Supreme Court reversed. The court first observed that the primary issue to be resolved was whether the "fraudulent

concealment" referred to in § 3602 requires affirmative misrepresentations by the employer regarding the existence of the injury and its connection with the employment, or whether the employer may be held liable in an action at law if he merely knew of these matters but failed to reveal them to the employee. *Id.*, 40 Cal.3d at 308–09, 219 Cal.Rptr. 485, 707 P.2d 858. The court concluded that affirmative misrepresentations are not required to support such an action. *Id.*

The court held that an employee seeking to state a cause of action against an employer under § 3602(b)(2) must "in general terms" plead facts showing that the employer knew the employee had suffered an employment-related injury, that the employer concealed that knowledge from the plaintiff, and that the injury was aggravated as a result of that concealment. *Id.* at 312, 219 Cal.Rptr. 485, 707 P.2d 858. Plaintiffs contend that this court should apply the same standard in this case.

With regard to United's argument that it could not have concealed knowledge of plaintiffs' injuries because it did not know about those injuries until plaintiffs reported the symptoms, plaintiffs respond that this argument ignores the allegations in the FAC that United knew from the beginning of its F117 maintenance program of the injuries that would be caused by exposing its employees to dangerous levels of hexavalent chromium dust, and the allegations that United was required by state and federal regulations to monitor the levels of toxic chemicals to which plaintiffs were exposed.

Plaintiffs contend that the allegations that United knowingly exposed plaintiffs to levels of hexavalent chromium dust that United *knew* was causing them injuries is sufficient to allege United's knowledge of plaintiffs' injuries long before plaintiffs reported their own symptoms to their supervisors—and that in any event, plaintiffs did not know that their injuries were caused by exposure to hexavalent chromium. Plaintiffs believe that discovery into United's monitoring records will show the exact nature and extent of United's prior knowledge.

Plaintiffs assert that the *Hughes* case is inapplicable because it involved a motion for summary judgment, and did not address the initial pleading requirements for a § 3602(b)(2) claim. Here, plaintiffs suggest, instead of following *Hughes*, the court should be following the state court decisions that address standards for pleading a § 3602(b)(2) claim, such as *Foster*, 40 Cal.3d at 312, 219 Cal.Rptr. 485, 707 P.2d 858; and *Palestini v. General Dynamics Corp.*, 99 Cal.App.4th 80, 87, 120 Cal. Rptr.2d 741 (2002).

Plaintiffs argue that the FAC sufficiently alleges that United knew that plaintiffs had been injured by exposure to hexavalent chromium, that such exposure had "injured [p]laintiffs' respiratory tract, eyes and skin, and that repeated exposure over time increased the likelihood that [p]laintiffs would develop lung cancer, yet concealed that knowledge from [p]laintiffs;" and that plaintiffs injuries were aggravated by the repeated exposure. Thus, plaintiffs assert, the FAC meets the general standard set forth in *Foster*, because it adequately alleges "in general terms" that plaintiffs were injured by exposure to hexavalent chromium, which increased their risk of developing cancer.

The court finds that the motion must be GRANTED. Plaintiffs have not alleged the requisite elements of the § 3602(b)(2) exception—that United knew of each plaintiff's workplace injury, that United concealed that knowledge from each plaintiff, and that the concealment aggravated the injury. Moreover, they are conflating knowledge of exposure with knowledge of

injury, which is insufficient to support a § 3602(b)(2) claim as a matter of law.

Plaintiffs allege that United was aware of the toxicity of hexavalent chromium from the relevant Material Safety Data Sheets; that United was aware that workers exposed to hexavalent chromium were likely to develop job related injuries to their respiratory system; that United knew that plaintiffs were being exposed to hexavalent chromium" at significant levels;" that United knew that plaintiffs had sustained injuries to their respiratory systems and exposed skin due to the exposure; that plaintiffs complained to their supervisors at United of their injuries; and that United concealed from plaintiffs that their injuries were caused by the exposure and that the continuous and re-peated re-exposure was aggravating their injuries. *See* FAC ¶¶ 7, 10, 17.

Under *Hughes*, plaintiffs' claims are precluded because the FAC alleges that United learned of the injuries from plaintiffs themselves. Moreover, even after receiving leave to amend, plaintiffs have still not provided specific details of the alleged injuries and the alleged aggravation of those injuries. Contrary to what plaintiffs suggest in their opposition, state court pleading standards do not apply in this case; rather, plaintiffs are required to comply with federal rules of pleading.

*Foster* was a state court case, where the court allowed the plaintiffs claims to proceed only because of the state statutory requirement to "liberally construe pleadings." *Id.*, 40 Cal.3d at 312, 219 Cal.Rptr. 485, 707 P.2d 858. A state court's policy of "liberally construing pleadings" does not eliminate the federal court requirements of pleading with both plausibility and particularity.

When a plaintiff initially files his complaint in state court, and (as here) it is removed to federal court, the complaint becomes subject to federal pleading re-

quirements under Rule 8, and the question whether the allegations are sufficient under state-court pleading requirements becomes irrelevant. *See, e.g., Provencio v. Armor Holdings, Inc.*, 2007 WL 2814650 at *2 (E.D.Cal. Sept. 25, 2007) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 438, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974)). Thus, for example, the key allegation of United's knowledge of the alleged injuries is *not* merely an issue of fact to be developed through discovery, but rather is an essential element of the cause of action and must be pled with particularity under Rule 9(b).

A second difference between the present case and *Foster* is that in *Foster*, the plaintiff alleged that the defendant had fraudulently concealed from him that his injuries were connected with his employment, whereas in the present case, plaintiffs allege that they reported to their supervisors that they were experiencing injuries "while at work." *See* FAC ¶ 10. Thus, there is no possible way United could have "concealed" that the asserted injuries were connected to employment, because, as plaintiffs allege, they already knew their injuries were connected with their work.

Plaintiffs have not alleged the elements required to state a claim under the "fraudulent concealment" exception, and have failed to plead fraud with particularity. In particular, plaintiffs have not alleged that United knew about their injuries—only that United knew that exposure to hexavalent chromium was hazardous—and does not allege that United concealed those injuries from plaintiffs—only that United concealed the hazards of exposure from plaintiffs.

## C. Leading Edge's Motion

Leading Edge argues that the claims against it must be dismissed because plain-

tiffs have failed to state sufficient facts to support a cause of action for negligence. Plaintiffs allege that Leading Edge acted "negligently and carelessly" in the sanding, crating, and shipping of the crates containing the F117 nose inlet cowls, and in failing to advise United that the crates contained loose particles of hexavalent chromium. Plaintiffs allege that this "negligent" conduct caused them to suffer further injuries from exposure to hexavalent chromium.

The elements of a cause of action for negligence are duty, breach, causation, and damages. Cal. Civ.Code § 1714(a); *Rowland v. Christian,* 69 Cal.2d 108, 118–19, 70 Cal.Rptr. 97, 443 P.2d 561 (1968). Leading Edge contends that plaintiffs have failed to plead facts showing that it owed them a duty of care, that it breached that duty, or that its alleged breach caused plaintiffs to be damaged.

█ The existence of a duty to use due care toward the interest of another is a "threshold element" of a cause of action for negligence. *Bily v. Arthur Young Co.,* 3 Cal.4th 370, 397, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992). Leading Edge asserts that the claims asserted against it should be dismissed because plaintiffs have failed to allege a statute or contract giving rise to a duty, and have failed to sufficiently allege that it owed a duty to the plaintiffs on any other basis. Instead, it asserts, plaintiffs repeatedly allege only that Leading Edge "acted negligently and carelessly."

Leading Edge notes that plaintiffs also allege that it "owed a legal duty to those who would foreseeably open the crates that contained the [h]exavalent [c]hromium dust particles in levels significantly greater than the Action level and PEL," FAC ¶ 205, but this is essentially an allegation that Leading Edge owed some limitless duty not to cause injury to plaintiffs by this toxic substance. Leading Edge notes

that a duty may be premised on the general character of the activity, the relationship of the parties, or the nature of human society, but that the duty plaintiffs are alleging is so broad in nature as to impose a duty with regard to any type of damage to anyone, and would impose limitless liability upon society.

█ The factors that traditionally are used to determine the existence and scope of duty in a particular case are (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered injury, (3) the closeness of the connection between the defendant's conduct and the injury suffered, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden on the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and (7) the availability, cost, and prevalence of insurance for the risk involved. *Rowland,* 69 Cal.2d at 113, 70 Cal.Rptr. 97, 443 P.2d 561.

█ Leading Edge asserts that under the factors set forth above, plaintiffs cannot allege that Leading Edge owed them any duty of care. Leading Edge also cites to the general rule that a contractor owes no duty of care to an employee of another contractor. In *Kinsman v. Unocal Corp.,* 37 Cal.4th 659, 36 Cal.Rptr.3d 495, 123 P.3d 931 (2005), the California Supreme Court held that under worker's compensation principles, which provide exclusive remedies for such workers, the duty to provide safety equipment to an employee is that of his/her own employer, and a general contractor is relieved of any such duty to an employee of a subcontractor. *Id.* at 681, 36 Cal.Rptr.3d 495, 123 P.3d 931. The court explained that such defendants are not liable for injuries caused by others to employees of independent sub-

contractors pursuant to the exclusive remedy provision of *Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (1993). *Id.*

Finally, Leading Edge contends that in addition to failing to identify any duty that it owed to plaintiffs, plaintiffs have failed to adequately allege a breach of any duty; and have also failed to allege facts showing that Leading Edge was the cause of any injury they suffered, given that their injury was supposedly exposure to the very same hexavalent chromium that they were exposed to in the course of their work with United.

In opposition, plaintiffs assert that the FAC alleges that Cal–OSHA and Federal OSHA regulations create a duty of care, and that these regulations can be used to show a duty of care to the same extent as any other regulation or statute. In support, plaintiffs rely on *Elsner v. Uveges,* 34 Cal.4th 915, 935–36, 22 Cal.Rptr.3d 530, 102 P.3d 915 (2004). Plaintiffs assert further that the FAC alleges that Leading Edge breached its duty of care by exposing plaintiffs to toxic hexavalent chromium dust, and that plaintiffs were injured as a result of that exposure. Plaintiffs contend that it is premature to attempt to apportion liability between United and Leading Edge, and that the parties must conduct discovery into "the relative responsibility of the two defendants" with regard to the injuries suffered by the five plaintiffs who sued both United and Leading Edge.

Plaintiffs assert further that there is no merit to Leading Edge's argument that it is entitled to claim worker's compensation exclusivity despite the fact that it is not plaintiffs' employer. They contend that the cases cited by Leading Edge specifically provide that a third party may be liable for injuring another's employee if the third party "affirmatively contributed" to the employee's injuries, which is what plaintiffs claim they are alleging in this case—

that Leading Edge's negligence effectively contributed to their injuries as described in the FAC.

The court finds that the motion must be GRANTED, because plaintiffs have failed to allege facts sufficient to support the elements of the cause of action for negligence. In particular, the FAC does not set forth what duty Leading Edge owed to the plaintiffs. Moreover, the FAC does not allege facts sufficient to show that Leading Edge "affirmatively contributed" to their injuries which were allegedly caused by United. *See Privette,* 5 Cal.4th at 702, 21 Cal.Rptr.2d 72, 854 P.2d 721.

Plaintiffs assert that the duty of care is based on federal and state workplace safety regulations. However, the OSHA and Cal–OSHA regulations set standards that employers must comply with in the workplace. They do not create a duty on the part of Leading Edge, which was a subcontractor of United—plaintiffs' employer, which had no direct contact with plaintiffs—which would be sufficient to support a cause of action for negligence.

The case cited by plaintiffs—*Elsner v. Uveges*—involved a claim for negligence brought by a roofing subcontractor's employee, who was injured on the job in 1998 and brought a third-party action against the general contractor and its joint venturer on the construction project. The general contractor filed a motion in limine to exclude references to Cal–OSHA regulations and their alleged violations. The Superior Court denied the motion and subsequently entered a verdict finding the contractor negligent, because he had furnished a defective scaffholding for use on the job site. The Court of Appeal reversed, and the Supreme Court granted review.

The Supreme Court held that under the 1999 amendment to California Labor Code § 6304.5, Cal–OSHA provisions are admis-

sible in negligence actions, just as any other statute or regulation, including in third-party actions. The rule prior to the amendment had been that Cal–OSHA regulations could not be used to establish a standard or duty of care in employee negligence actions against non-employers. However, the Supreme Court also affirmed the decision of the Court of Appeal, on the basis that the use of the Cal–OSHA provision to establish the standard of care was an impermissible retroactive application of the amendment.

Nevertheless, the facts in *Elsner* are clearly distinguishable from the facts in the present case. In *Elsner*, the general contractor was responsible for erecting the faulty scaffold, on which the plaintiff was required to stand or climb in order to perform the roofing job. The plaintiff sued the general contractor, and alleged a duty of care based on Cal–OSHA regulations. Here, Leading Edge performed the sanding work at United's behest, and when the work was completed, returned the F117 nose inlet cowls to United in the crates. Unlike the general contractor who constructed the defective scaffolding for use on the job—where it was clearly foreseeable that the plaintiff roofer would be climbing or standing on the scaffolding—United (acting as general contractor here) gave Leading Edge the task of sanding the F117 nose inlet cowls, and once the task was completed at Leading Edge's facility, Leading Edge returned the nose inlet cowls to United.

Leading Edge did not perform any work that would reasonably have been expected to have some direct impact on the plaintiffs, and there are no allegations that Leading Edge did anything directly to plaintiffs. Moreover, plaintiffs have alleged no basis for holding Leading Edge responsible for maintaining compliance with Cal–OSHA regulations at United's San Francisco Maintenance Center.

## CONCLUSION

In accordance with the foregoing, defendants' motions to dismiss are GRANTED.[1] Having previously granted leave to amend, the court finds that granting further leave to amend would be futile. The dismissal is therefore WITH PREJUDICE.

**IT IS SO ORDERED.**

---

1. Defendants also argue that the case must be dismissed because the facts as pled establish the elements of two federal defenses for military contractors. The court finds it unnecessary to address this argument, however, as dismissal is warranted on the basis that the FAC fails to state a claim under the worker's compensation law's fraudulent concealment exception as to United, and also fails to state a negligence claim against Leading Edge.